UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCIA CARILLO,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>    Defendant. | No. 1:19-cv-01767-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 18, 23)** |

**I.    Introduction**

Plaintiff Lucia Carillo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 18, 23. After reviewing the record the Court finds that substantial evidence and applicable do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

**II.    Procedural Background**

On February 20, 2018 Plaintiff filed an application for disability insurance benefits claiming disability beginning June 6, 2016 due to "back injury, spinal stenosis, bone degeneration" and "left ankle, numbing sensation." AR 147. The Commissioner denied the application initially on May 17, 2018 and on reconsideration on September 25, 2018. AR 57–67, 68–80.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on June 4, 2019. AR 36–56. Plaintiff was represented by counsel at the hearing. AR 36.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 5 and 6.

1

On June 28, 2019, the ALJ issued a decision denying Plaintiff's application. AR 18–32. The Appeals Council denied review on October 28, 2019. AR 1–7. On December 19, 2019 Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff (born June 1964) lived alone in a single-story home. AR 40. She completed high school. AR 39. Plaintiff worked approximately twenty years as a factory worker for the Parker-Hannifin Corporation assembling and inspecting fuel filters for vehicles. AR 40–42, 139. She routinely had to bend over to lift 25-pound boxes of reject parts for inspection. AR 42. She developed back pain related to the on-the-job lifting which progressively worsened. AR 42–43. In 2015 she was relegated to light duty and ultimately let go in 2016 when she could no longer perform her job tasks. 47–48.

Plaintiff underwent spinal surgery in December 2018 upon recommendation of her neurosurgeon who opined that her stenosis and degeneration would lead to paralysis if left untreated. AR 43, 45. She had six screws put in her back as well as a new disc and a titanium bar. AR 43. Her osteoporosis required the insertion of more screws than would have otherwise been necessary. AR 43. Before her surgery her back pain was so severe she would black out while alone at home and wake up shaking from shock. AR 43–44. After surgery she could not bend or lift, her ankle frequently swelled and stiffened and she needed a walker for mobility outside her home. AR 43–46. Her ankle mobility, flexibility and weight bearing ability were limited. AR 46–47. After surgery she underwent a course of physical therapy. AR 51. Additional therapy was recommended. AR 51. Her insurance carrier would not authorize additional physical therapy for her back, but she had recently begun physical therapy for her ankle. AR 51.

She was mostly home bound other than attending church and medical appointments. AR 51. She had in-home care 34-hours per month to help her cook, clean and shop. AR 48–49. She used a shower chair and a grasping stick to dress. AR 49–50. She could lift up to four pounds, drive short distances, stand for a short time, sit up to an hour and spent four hours a day lying down. AR 49–52.

**B.     Medical Records**

A February 2018 MRI revealed marked narrowing of the lumbar spine and compressed nerves. AR 298. Contemporaneous examination findings noted mild back pain with range of motion testing and a normal gate. AR 302; 305–06. She began physical therapy in March 2018 after reporting poor tolerance for walking and impaired day-to-day functioning. AR 353. She reported continued improvements at her physical therapy appointments. AR 353–74. A May 2018 examination revealed normal gait, non-tender low back and full but painful range of motion (ROM). AR 390. A July 2018 examination revealed normal ROM and gait. AR 385.

Plaintiff visited Dr. Oladunjoye in August 2018 who recommended surgery. AR 417. An October 2018 MRI confirmed stenosis and impingement. AR 423. On December 14, 2018, Plaintiff underwent multilevel lumbar fusion, laminectomy, facetectomy, discectomy and foraminotomy. AR 2142. She was hospitalized post-op and discharged a week later with a walker. AR 2142. At her one month follow up she reported a 70% reduction in pre-op symptoms, pain level 3 out of 10 and her physical examination revealed 5/5 strength in bilateral lower extremities. AR 2482–83. At her three month follow up she reported 80% reduction in pre-op symptoms and was instructed she could wean off her brace. AR 2484. Plaintiff completed a course of twelve post-op physical therapy sessions between February and May 2019. AR 1948–69. Records reflect subjective improvements following physical therapy (reduction in symptoms, decreased need for walker) and objective improvements (lumbar strength, ROM, gait). AR 1948–69. Records reflect 50% progress toward most therapy goals. AR 1969. Her therapist recommended eight additional therapy sessions to address continued posterior chain weakness, core musculature weakness and difficulty ambulating more than 10 minutes. AR 1969.

A July 19, 2018 left ankle x-ray revealed a small spur and Plaintiff was diagnosed with a sprained ankle the following month. AR 395, 437. Plaintiff completed twelve physical therapy sessions from September 2018 through November 2018 for her ankle. AR 438. Upon discharge on November 14, 2018, Plaintiff reported pain level 8 out of 10 with activity, and level 2 out of 10 when resting and medicated. AR 438. Her self-reported survey results for lower extremity functioning were 28 out of 80 with 60-80% limitation. AR 438. Plaintiff achieved most of her

treatment goals. AR 439. Her therapist's evaluation noted increased strength, ROM and stability, but continued flexibility deficits to be addressed with home exercise. AR 439. December 17, 2018 physical exam results noted good ankle dorsiflexion, plantarflexion and eversion. AR 579, 2080.

May 24, 2019 bone density scan findings were compatible with osteoporosis. AR 2955. She was advised to consider treatment and follow up in two years. AR 2955. On June 10, 2019 Plaintiff visited Family First Medical Care and was diagnosed with age-related osteoporosis without current pathological fracture. AR 35. Plaintiff submitted the Family First medical records to the appeals council.

### C.  **Medical Opinions and Prior Administrative Findings**

Non-examining state agency medical consultants Dr. Wong and Dr. Lee reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively, and both opined that Plaintiff could perform light work with some postural limitations. AR 63–64; 75–77.

Plaintiff's neurosurgeon, Dr. Olandunjoye, completed an undated residual functional capacity questionnaire. AR 2950–53. He diagnosed Plaintiff with lumbar spinal stenosis with instability and intractable lower back pain with radiculopathy. AR 2950. He opined that Plaintiff could sit and stand/walk for less than 2 hours each in an 8-hour working day, could rarely lift up to 10 pounds, and could never twist, stoop, crouch or climb. AR 2950–52. He opined that she needs a job that permits shifting at will between sitting, standing and walking. AR 2952. Finally, he opined that Plaintiff would miss more than four days of work a month. AR 2953.

### D.  **Vocational Expert**

A vocational expert ("VE") testified at the administrative hearing. The ALJ questioned the VE regarding a hypothetical individual of Plaintiff's age, education and work history who could perform light work with some postural limitations. AR 52. The VE opined that such an individual could perform Plaintiff's past work as a filters assembler as that job is generally performed (light exertional level), but not as Plaintiff actually performed it (medium exertional level). AR 53. If the individual was limited to sedentary work, no work would be available. AR 54.

## IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether

5

he would be hired if he applied for work.

        42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**VI.**    **The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. AR 23. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine. AR 23. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with some postural limitations. AR 24–26. At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could perform her past relevant work as a filters assembler as generally performed, but not as actually performed. AR 26. Accordingly, the ALJ found that

Plaintiff was not disabled.  AR 26.

**VII.   Issues Presented**

Plaintiff asserts three claims of error.  First, Plaintiff contends the ALJ erred at steps two and four in dismissing her osteoporosis and left ankle impairments without consideration or discussion.  Br. at 7, Doc. 18.  Second, Plaintiff contends the ALJ wrongfully rejected the opinion of her neurosurgeon, Dr. Oladunjoye.  Br. at 9.  Third, Plaintiff contends the ALJ improperly rejected her subjective testimony as to the severity of her symptoms.  Br. at 11.  Plaintiff's three claims of error will be addressed in turn.

**A.   Dismissing Osteoporosis and Left Ankle Impairments at Steps Two and Four**

**1.   Applicable Law**

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005). A medically determinable physical or mental impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and will not be found based solely on the claimant's statement of symptoms, a diagnosis or a medical opinion. 20 C.F.R. § 404.1521.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment or combination of impairments is one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. § 404.1522. "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and mental functions

such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. 20 C.F.R. § 404.1522.

When reviewing an ALJ's findings at step two the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

Irrespective of severity, all medically determinable impairments are considered when assessing a claimant's residual functional capacity prior to step four. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.") (citations omitted).

### 2. Analysis

Plaintiff contends the ALJ erred in failing to consider her osteoporosis and ankle injury at steps two and four. Defendant responds that there was no evidence that either impairment caused workplace limitations that lasted 12 months. The Court finds that the ALJ did not err in omitting Plaintiff's osteoporosis from her discussion, but did err with respect to Plaintiff's ankle impairment.

#### a. Osteoporosis

The administrative record contains two pieces of medical evidence concerning Plaintiff's osteoporosis. May 24, 2019 bone density scan findings were compatible with osteoporosis. AR 2955. Plaintiff was advised to "[c]onsider treatment and follow-up in 2 years." AR 2955. On June 10, 2019 Plaintiff was diagnosed with age-related osteoporosis without current pathological fracture. AR 35. Plaintiff and her physician "discussed pathophysiology and future ramifications of low bone density" and "discussed recommendations for treatment and daily calcium intake." AR 35. Thus, the records establish only a diagnosis, a recommendation for daily calcium intake, a

recommendation to consider non-specific other "treatment" and an instruction to follow up in two-years. These records do not suggest that Plaintiff's osteoporosis caused any functional limitations.

Plaintiff states that her spinal fusion surgery was "reportedly complicated by suspected osteoporosis." Br. at 3 (citing AR 2539–43; AR 43). Plaintiff cites to the spinal fusion surgery records (AR 2539–43) but those records contain no mention of osteoporosis. Plaintiff also cites to her own testimony that Dr. Oladunjoye "had to put extra screws in my back [during fusion surgery] because of the osteoporosis." AR 43. The use of extra screws during her fusion surgery does not support an inference that osteoporosis exacerbated her degenerative disc disease, undermined the efficacy of her fusion procedure or stymied her progress thereafter.[2] Even assuming osteoporosis complicated Plaintiff's spinal fusion surgery, the ALJ's analysis of Plaintiff's osteoporosis-related limitations would be subsumed in her analysis of the degenerative disc disease itself (which the ALJ found to be a severe impairment). Plaintiff offers no explanation as to what her alleged osteoporosis related limitations were. She simply contends the ALJ erred in not acknowledging the condition.

Because the record contains no evidence that Plaintiff's osteoporosis caused any distinct functional limitations, the ALJ did not err. *See Lowery v. Colvin*, 2014 WL 183892, *4 (D. Or. Jan. 14, 2014) ("In the Ninth Circuit, excluding a diagnosis from the list of severe impairments at step two is significant only if the impairment caused additional functional limitations not accounted for in the RFC assessment." (citing *Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007)).

### b.     Left Ankle Impairment

The record establishes that Plaintiff had a medically determinable impairment in her left ankle. A July 19, 2018 left ankle x-ray revealed a small spur and Plaintiff was diagnosed with a sprained ankle the following month. AR 395, 437. Plaintiff completed twelve physical therapy sessions from September 2018 through November 2018 for her ankle. AR 438. Upon discharge her therapist's evaluation noted increased strength, ROM and stability but continued flexibility deficits to be addressed with home exercise. AR 439. December 17, 2018 physical exam results

---

[2] Noticeably absent from Dr. Oladunjoye's opinion is any discussion of osteoporosis (suspected or otherwise) or any related surgical complications.

9

1   noted good ankle dorsiflexion, plantarflexion and eversion. AR 579, 2080.

2   Defendant contends that these records "establish[] that Plaintiff had a sprained ankle for which she received treatment and, beginning four months later, examinations were normal." Br. at 7. Accordingly, Defendant concludes that Plaintiff's ankle impairment "did not last for 12 months, and, therefore, could not be considered a severe impairment." Resp. at 7. Indeed, Plaintiff exhibited good ankle dorsiflexion, plantarflexion and eversion during her post-fusion surgery recovery examination on December 17, 2018. AR 579. However, she testified that "after her surgery" she could not bend or lift, her ankle frequently swelled and stiffened and she needed a walker for mobility outside her home. AR 43–46. She testified that her ankle mobility, flexibility and weight bearing ability were limited. AR 46–47. Finally, she testified that she had physical therapy scheduled for her ankle on June 11, 2019. AR 51.

In sum, approximately eleven months after her bone spur and ankle sprain diagnosis Plaintiff testified she continued experiencing extensive ankle limitations and had additional physical therapy scheduled. This is not inconsistent with the notion that her ankle limitation was a severe impairment which could be expected to last twelve months from onset (i.e. one month beyond the date of her testimony). However, her December 17, 2018 normal ankle examination arguably undermines her testimony and supports the opposite conclusion. In such circumstances courts are to defer to an ALJ's conclusion where the evidence supports two conclusions. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). Here, the ALJ's decision contains no conclusions to which the Court can defer regarding the severity of Plaintiff's ankle impairment. The ALJ simply did not acknowledge Plaintiff's ankle impairment or corresponding records. Remand is appropriate for the ALJ to determine at step two whether Plaintiff's left ankle impairment was a severe impairment that could be expected to last twelve months from onset. Even if not severe, the ALJ should determine the impact (if any) of the ankle limitation on Plaintiff's RFC prior to step four. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.") (citations omitted).

### B. Rejection of Dr. Oladunjoye's Opinion

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

11

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

### 2. **Analysis**

The ALJ rejected Dr. Oladunjoye's opinion as "grossly over-restrictive in light of the clinical examination findings from before her surgery and the evidence of improvement with physical therapy soon after surgery, *as discussed above*." AR 25 (emphasis added). Plaintiff contends the ALJ provided no citation to the record and no interpretation of any specific "clinical examination findings." Br. at 10. However, the ALJ did reference an earlier factual discussion containing such citations and interpretations, and although a generalized reference to an earlier factual summary is not ideal, it was clear which prior findings the ALJ was referring to here.

The ALJ provided the following summary of Plaintiff's pre and post-operative clinical examination findings:

> *Pre-surgical clinical examination findings showed tenderness and decreased range of motion, but otherwise grossly normal motor strength, sensation, and gait* (Exhibits 1F, 3F, 5F, 8F, and 16F). Associated treatment aside from the fusion surgery has included physical therapy and medication management, such as with nonsteroidal anti-inflammatory drugs ("NSAIDs"), medication used to treat neuropathic pain, muscle relaxants, and opioid pain medications (e.g. Exhibits 1F, 7F, 8F, 16F, 20F, 21F, and 22F). *Post-surgical physical therapy records show improvement with lumbar strength, range of motion, and gait following her surgery, but persistent tenderness* (e.g. Exhibit 20F/44).

AR 24–25 (emphasis added).

As to pre-surgical clinical examination findings, a review of the ALJ's cited exhibits largely confirms the accuracy of her description. The Court did note one exception, namely exhibit 5F (AR 327) which noted "[a]ntalgic gait," in contrast to the ALJ's description of a normal gate. The remaining exhibits cited by the ALJ confirm the accuracy of her description.

As to post-surgical physical therapy records, however, the ALJ's description is incomplete. The ALJ cited only one page of the medical file in support of her assessment of post-surgical examination findings (Exhibit 20F/44, AR 1969) making it all the more important that she fully capture the clinical assessment contained therein. The page in question contains Plaintiff's final physical therapy evaluation after her twelve visits. The physical therapist identified three areas of improvement (lumbar strength, range of motion, and gait). AR 1969. But the physical therapist also identified three areas of continued limitation: 1) "Patient remains very weak throughout the posterior chain as well as the core musculature;" 2) "TTP [tenderness to palpitation] to the lumbar paraspinals;" and 3) "Patient continues to have trouble ambulating for > 10 minutes."[3] AR 1969. The ALJ identified Plaintiff's continued tenderness but not the other limitations identified by the physical therapist.

In sum, of the five regulatory factors outlined at 20 C.F.R. § 404.1520c, the ALJ's discussion implicates only the first factor (supportability). The ALJ found Dr. Oladunjoye's opinion unsupportable in light of pre-surgical clinical examination findings and post-surgical improvement. The ALJ provided one sentence of analysis devoted to each (as a part of her six-

---

[3] As to the walking limitation, the physical therapist's full description provides some potentially relevant context: "Patient continues to have trouble ambulating for > 10 minutes, *driving, and participating in recreational activities.*" AR 1969 (emphasis added). It seems unlikely that the physical therapist observed Plaintiff driving or participating in recreational activities, rather the physical therapist was likely reciting Plaintiff's own subjective account of her continued limitations. It's certainly possible that the therapist observed Plaintiff unsuccessfully attempting to ambulate for more than 10 minutes during an exam. But it's not clear whether that is actually what occurred or if he was simply reciting Plaintiff's subjective statements. In any event, the ALJ's decision is silent as to her thoughts on the matter.

sentence summary of the 2965-page medical file). Her analysis of Plaintiff's post-surgical improvement cites one page of the medical file containing a concise clinical assessment. The clinical assessment identified three areas of improvement and three continued limitations. The ALJ did not acknowledge two of the three continued limitations.

The ALJ's omission is notable given the rather limited basis offered for her rejection of Dr. Oladunjoye's opinion and her limited discussion of the medical file generally. The omission is important because the limitations identified by the physical therapist tend to support Dr. Oladunjoye's assessment of relevant functional capacities (strength, walking), and potentially undermines the ALJ's RFC for light work. The omission is also significant given the VE's testimony that all work would be precluded if Plaintiff were limited to the sedentary exertional level. Remand is warranted for the ALJ to consider the supportability of Dr. Oladunjoye's opinion in light of all evidence of Plaintiff's post-surgical limitations.

### C.     Rejecting Plaintiff's Testimony

#### 1.     Applicable Law

The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective

---

[4] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. **Analysis**

The ALJ found that Plaintiff's back impairment could reasonably be expected to produce some degree of the symptom or pain alleged. AR 25. The ALJ found no malingering. AR 25. The ALJ was therefore required to offer clear and convincing reasons for rejecting Plaintiff's testimony. *Burrell*, 775 F.3d at 1136. The ALJ offered the following basis for rejecting Plaintiff's testimony:

> The objective evidence, including clinical examination findings, extent of treatment outside of the surgery, and documented improvement following her surgery, are not entirely consistent with the claimant's allegations of disabling symptoms.

AR 25. Thus, the ALJ offered two of the same reasons offered in support of her rejection of Dr. Oladunjoye's testimony: clinical examination findings and post-surgical improvement. However,

the ALJ did not further elaborate on those reasons. The Court finds the explanation equally insufficient to justify the rejection of Plaintiff's testimony under the applicable "clear and convincing" standard. *See Moore v. Commissioner of SSA*, 278 F.3d 920, 924 (9th Cir. 2002) ("The clear and convincing standard is the most demanding required in Social Security cases.").

The ALJ offered one additional justification for rejecting Plaintiff's testimony, namely "extent of treatment outside of the surgery." AR 25. The ALJ explained Plaintiff's treatment history as follows: "Associated treatment aside from the fusion surgery has included physical therapy and medication management, such as with nonsteroidal anti-inflammatory drugs ("NSAIDs"), medication used to treat neuropathic pain, muscle relaxants, and opioid pain medications (e.g. Exhibits 1F, 7F, 8F, 16F, 20F, 21F, and 22F)." The ALJ's reasoning is neither clear nor convincing. Plaintiff's treatment was indeed conservative prior to her spinal fusion surgery. But she did have the spinal fusion surgery. The fact that Plaintiff also had conservative treatment prior to surgery does not undermine her testimony about her allegedly disabling limitations.

### VIII. Conclusion and Remand for Further Proceedings

Remand is appropriate for the ALJ to: 1) consider whether Plaintiff's left ankle impairment was a severe impairment and (even if not severe) whether it nonetheless impacts her RFC; 2) to properly evaluate Dr. Oladunjoye's opinion, and 3) to properly evaluate Plaintiff's subjective testimony. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### IX. Order

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion. Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter

is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment in favor of Plaintiff Lucia Carillo and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**February 1, 2021**__          **/s/ Gary S. Austin**
                                                                   UNITED STATES MAGISTRATE JUDGE